UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN DOUGLAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:13-cv-1351-WTL-MJD |
| | ) |
| CORIZON, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON OBJECTION TO MAGISTRATE JUDGE'S ORDER

This case is before the Court on the Defendants' objection to Magistrate Judge Dinsmore's order on the Plaintiff's motion to compel. *See* Dkt. No. 72 (objection); Dkt. No. 71 (order on motion to compel). The issues are fully briefed and the Court, being duly advised, **SUSTAINS IN PART AND OVERRULES IN PART** the objection to the extent and for the reasons set forth below.

### I. BACKGROUND

In this case brought pursuant to 29 U.S.C. § 1983, Plaintiff Steven Douglas alleges that while he was incarcerated in Indiana correctional facilities he complained of symptoms such as "blood in stool, black/tarry stools, extreme pain, rectal bleeding, inability to have a bowel movement despite urgency to do so, anal leakage, swelling/knot in rectum, and the inability to sit because of pain." Complaint at ¶ 15. He alleges that Defendants Vance Raham and Richard Tanner, who are doctors, "provided only minimal care to [him] and failed to provide diagnostic testing to determine the cause of his persistent and serious symptoms." *Id.* at 17. After his release from prison, Douglas was diagnosed with rectal cancer. He alleges that the Defendant doctors' treatment of him fell below the standard of care and delayed the diagnosis and treatment

of his cancer. He also alleges that Defendant Corizon, Inc., the doctors' employer and the entity responsible for providing medical care at the correctional facilities at issue, failed to provide adequate training to its medical staff and has the following policies and practices that led to him being denied adequate medical care: (1) not ordering diagnostic tests for inmates; (2) denying inmates' requests for diagnostic testing; (3) inadequately monitoring the health care provided to inmates; and (4) hiring physicians who have a history of providing inadequate or negligent health care.

The Plaintiff moved to compel the Defendants to respond to a request for production and three interrogatories to which they had objected. The motion was fully briefed and the Magistrate Judge held a hearing on the matter, after which he granted in part and denied in part the motion to compel. At issue before the Court is the Defendants' objection to two aspects of that ruling.

## II. DISCUSSION

Because the Magistrate Judge's ruling on the motion to compel was a nondispositive ruling, it is subject to review for clear error. *Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014); *see also* Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A) (both establishing standard for reviewing non-dispositive rulings by magistrate judges). The Defendants argue that Magistrate Judge Dinsmore's ruling on the motion to compel was clearly erroneous in two respects.

First, the Defendants object to the fact that, in ordering them to respond to a modified version of Interrogatory No. 30, the Magistrate Judge ordered them to reveal the amount of any settlement Corizon, Inc., has paid to resolve any lawsuit filed against it since January 1, 2004, alleging "inadequate or improper medical care related to the delayed diagnosis of colorectal

cancer."[1] The Defendants argue that they should not be required to reveal the amounts of any settlements responsive to Interrogatory No. 30 because the settlement agreements in question are confidential and the settlement amounts are of dubious relevance to this case. The Court agrees.

While Judge Dinsmore correctly noted that there is no privilege applicable to confidential settlements, that does not mean that an objection to producing confidential settlement information is baseless. As Judge Hamilton recognized in the unpublished decision cited by the Plaintiff, *Meharg v. I-Flow Corp.*, 2009 WL 3032327 (S.D. Ind. 2009), it is appropriate to consider the confidentiality of a settlement agreement in determining whether requiring its production is appropriate. "Agreed settlements of dispute are of course essential in the American civil justice system. Courts try to encourage them whenever possible. That is why Rule 408 limits their admissibility so narrowly." *Id.* Clearly information about a settlement (or any other information, for that matter) cannot be insulated from discovery simply by virtue of the fact that the information has been designated "confidential" or parties to the settlement have agreed not to disclose it. But it is appropriate to weigh the interest in encouraging settlement by allowing parties to maintain the confidentiality of settlement agreements against the relevance to the issues in this case of the amounts the Defendant paid to settle other, unrelated cases. *See Centillion Data Systems, Inc. v. Ameritech Corp.,* 193 F.R.D. 550 (S.D. Ind. 1999) (*cited with approval in Meharg*, 2009 WL 3032327); *see also* Federal Rule of Civil Procedure 26(b)(2)(C)(iii) (court must limit extent of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the

---

[1] The Defendants do not object to the remaining information they must provide in response to modified Interrogatory No. 30.

importance of the discovery in resolving the issues").

This analysis was not conducted by Magistrate Judge Dinsmore in his ruling; indeed, his order does not specifically discuss the relevance of the settlement amounts. This is understandable in light of the fact that the parties did not brief the issue in those terms; indeed, the Defendants' response to the motion compel is lacking any citation to authority and best can be described as perfunctory. The Defendants have squarely raised the issue in their objection, however,[2] and have correctly distinguished *Meharg* which does not, as the Plaintiff argues, compel[3] (or even support) a finding that the amounts of settlements paid by a defendant in other cases is relevant and discoverable. Rather, *Meharg* addressed the discoverability of a settlement agreement between the plaintiff and a defendant by a non-settling co-defendant *in the same case*, and Judge Hamilton's reasons for finding the settlement agreement to be relevant (and the authority he cited) were all related to that unique situation.[4] Indeed, as noted above, Judge Hamilton approved of the holding in *Centillion* that the confidential settlement agreement from a previous case involving the same plaintiff and the same patent was not discoverable; he simply distinguished the two situations.

---

[2]The Plaintiff does not argue that the Defendants waived (or forfeited) arguments they did not raise before the Magistrate Judge. The Court notes that while the Plaintiff's briefs before Magistrate Judge Dinsmore were not as cursory as that of the Defendants, the Plaintiff also did not specifically address the relevancy of the settlement amounts.

[3]Indeed, as a district court opinion—an unpublished one at that—*Meharg* would be merely persuasive, not binding, authority even if it squarely supported the Plaintiff's arguments.

[4]For example, the Plaintiff correctly quotes *Meharg* as holding that "[r]edaction of the monetary settlement would not be consistent with potentially permissible uses of the settlement agreement." However, Judge Hamilton was referring to the fact that the settlement agreement in that case could be used to show bias or prejudice on the part of witnesses who were employed by the settling defendant, I-Flow Corp., who would be testifying at trial; "[f]or purposes of showing bias or prejudice of I-Flow witnesses, it would surely be relevant to know whether the settlement was for one million dollars or one thousand dollars." That reasoning is not applicable in this case, which does not involve a settling co-defendant who will still be a witness in the case.

The Plaintiff argues that the settlement amounts are relevant in this case in several ways. First, he argues that they will "serve a narrowing function," allowing the Plaintiff to focus energy on those cases in which Corizon paid higher settlement amounts because those cases presumably were more meritorious than those in which lower amounts were paid. To the extent that the Plaintiff's assumption is correct—and the Court notes that a party's decision to settle a case for a particular amount might be based on many factors other than the merits of the case—that strikes the Court as akin to invading the work product of Corizon's counsel in those cases. Second, the Plaintiff argues that the information might be admissible for a reason other than to prove the Defendants' liability; however, the Plaintiff does not articulate any such possible scenario. Finally, the Plaintiff, again citing *Meharg*, suggests that telling him what previous cases have settled for might improve the chances that this case will settle. Again, however, *Meharg* noted that to be the case in the context of a case in which some, but not all, co-defendants have settled: "'For example, in a claim for $1,000,000 involving overlapping claims against multiple defendants, the fact that one defendant has settled for $0, $100,000, or $750,000 has great strategic significance to the remaining defendants. Such information may promote settlement of the remaining claims and permits the remaining defendants to evaluate their risks in continuing with the litigation.'" *Id.* (quoting *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364 (N.D. Ill. 2001)). With regard to cases outside of that unique context, the Court agrees with the reasoning of *Centillion*:

> First, strong federal policy supports the settlement of cases and F.R.E. 408 does not exhaust the reach of this policy. Because confidentiality of settlement agreements is a primary inducement to parties to settle cases, courts require a strong countervailing interest to breach that confidentiality. Although Bell Sygma argues that review of the AT&T–Centillion settlement agreement will facilitate the process of settlement in this case, we believe, on balance, that settlements are and will be encouraged, in the run of cases, more by maintaining the confidentiality of agreements than by disclosure.

*Centillion*, 193 F.R.D. 550, 553 (S.D. Ind. 1999) (citation omitted). Indeed, the Plaintiff cites to no case outside of the non-settling co-defendant context in which a court has ordered the wholesale disclosure of the details of confidential settlement agreements entered into in unrelated cases.

The Court finds that the burden of requiring Corizon to breach its confidential settlement agreements in other cases and the public interest in encouraging settlement outweigh any possible relevance of the amounts of settlements of other cases to the claims and defenses in this case. Accordingly, the Court **SUSTAINS** the Defendants' objection to Magistrate Judge Dinsmore's order to the extent that it requires the Defendants to reveal the amount of any settlement in any unrelated case.

The Defendants also object to Magistrate Judge Dinsmore's order requiring them to respond to a modified version of Interrogatory No. 31, which reads:

> For the time period of August 1, 2008, to the present, list by case name, number, and date, all settlements of lawsuits in which Corizon, Inc. and/or its predecessor Correctional Medical Services . . . was alleged to be responsible or liable for inadequate health care of a prisoner or prisoners at any facility in which it or CMS provided medical services to prisoners in any jurisdiction. In making this list, separate any such findings[5] in the State of Indiana, and in other jurisdictions. For each settlement, please provide the following information: a. Title of Lawsuit; b. Court/Jurisdiction; c. Case Number; and d. Settlement Amount.

The Defendants' objection is **SUSTAINED** with regard to the settlement amounts, for the reasons already discussed. With regard to the remainder of Interrogatory 31 as modified, the Court disagrees with the Defendants that only cases involving inmates with colorectal cancer are potentially relevant to the Plaintiff's *Monell* claim. The pattern and practice showing the Plaintiff must make is not necessarily limited by medical condition; the Plaintiff could, for

---

[5]It is not clear to the Court what "findings" means in this context, but presumably it refers to each settled case.

example, show a general policy of refusing to order any diagnostic test, or any diagnostic test above a certain cost, or any diagnostic test for a certain category of inmate to which he belongs. The Defendants also suggest that only cases in Indiana are relevant, but they have failed to provide any information to show that this is the case. Perhaps Corizon's policies are established in each state independently, but perhaps they are all standardized nationwide, or established by region. That is the type of information that could have led the Magistrate Judge (or the Court) to narrow Interrogatory 31, but it is notably absent from the record before the Court. Accordingly, the Defendants have not demonstrated that Magistrate Judge Dinsmore's ruling with regard to modified Interrogatory 31—with the exception of the amounts of the settlements in question—is clearly erroneous, and the remainder of the Defendants' objection therefore is **OVERRULED**. The Defendants shall respond to modified Interrogatory 31, without subpart d, within 21 days of the date of this Entry.

SO ORDERED: 1/22/15

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

7